No. 15-3540

# In the United States Court of Appeals for the Eighth Circuit

Elizabeth McLeod, et al,

Plaintiffs-Appellees,

v.

General Mills, Inc.,

Defendant-Appellant.

ON APPEAL FROM
THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA
Civ. No. 15-cv-494 (JRT/HB), Hon. John R. Tunheim

**APPELLANT'S EMERGENCY MOTION FOR A STAY
PENDING APPEAL AND A TEMPORARY ADMINISTRATIVE STAY
PENDING DECISION ON THIS MOTION**

| | |
|---|---|
| Aaron D. Van Oort | Marko Mrkonich |
| Jeffrey P. Justman | Keith C. Hult |
| FAEGRE BAKER DANIELS LLP | LITTLER MENDELSON P.C. |
| 2200 Wells Fargo Center | 80 South Eighth Street |
| 90 South Seventh Street | Suite 1300 |
| Minneapolis, Minnesota 55402 | Minneapolis, Minnesota 55402 |
| (612) 766-7000 | (612) 313-7650 |

# **INTRODUCTION**

Nearly a century after the Federal Arbitration Act (FAA) was enacted, pockets of hostility to arbitration persist. All of Plaintiffs' claims in this case are subject to arbitration agreements, yet the district court not only refused to enforce those agreements, but it has also failed to issue a stay of litigation pending appeal and is allowing accelerated litigation to proceed—including an answer due *today*, an early Rule 26(f) conference set for Monday, and an early summary judgment motion with an opposition due December 1—making the right to appeal illusory.

General Mills moved for a stay in the district court on November 4 (*see* Dkts. 60-64), but although that motion has been pending more than two weeks, and although General Mills's deadline to answer is today, the district court has not ruled on the motion. Having moved first in the district court and given that court every opportunity to act, General Mills now moves in this Court for a stay pending appeal under Federal Rule of Appellate Procedure 8. General Mills also requests that the Court enter a temporary administrative stay *today* under 8th Circuit Rule 27A(b)(4) of all proceedings in the district court pending this Court's ruling on the stay. *See Brady v. Nat'l Football League*, 638 F.3d 1004, 1005 (8th Cir. 2011) (granting a temporary administrative stay).

General Mills is entitled to a stay because allowing litigation to proceed in the district court while this appeal is pending violates the rule that "[a] federal district court and a federal court of appeals should not attempt to assert jurisdiction over a

2

Appellate Case: 15-3540    Page: 2    Date Filed: 11/20/2015 Entry ID: 4338801

case simultaneously." *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982). The FAA authorizes an appeal as of right from an order denying a motion to compel arbitration. *See* 9 U.S.C. § 16. When a party files that type of appeal, the question presented to the court of appeals is precisely the "question whether the district court must stay its own proceedings pending arbitration," and the district court cannot predetermine the outcome of that question by proceeding before the court of appeals has the chance to act. *See Bradford–Scott Data Corp., Inc. v. Physician Computer Network, Inc.,* 128 F.3d 504, 506 (7th Cir. 1997) (Easterbrook, J.). The majority of circuits have therefore held that a stay of proceedings pending an arbitration appeal is mandatory. *See id.* at 504; *see also Levin v. Alms & Assocs., Inc.,* 634 F.3d 260, 264–66 (4th Cir. 2011); *Ehleiter v. Grapetree Shores, Inc.,* 482 F.3d 207, 215 n.6 (3d Cir. 2007); *McCauley v. Halliburton Energy Servs., Inc.,* 413 F.3d 1158, 1160–62 (10th Cir. 2005); *Blinco v. Green Tree Servicing, LLC,* 366 F.3d 1249, 1251–52 (11th Cir. 2004).

Regardless of whether a stay is mandatory in all arbitration appeals, however, General Mills is entitled to a stay in this appeal because it meets all of the factors for a discretionary stay. General Mills is highly likely to succeed on appeal and obtain an order reversing the decision below and enforcing the agreements to arbitrate because the Supreme Court has already held that agreements to arbitrate claims under the Age Discrimination in Employment Act are enforceable, *see Gilmer v. Interstate/ Johnson Lane Corp.*, 500 U.S. 20, 35 (1991); *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, __ (2009), and the rationales of those cases control this one. General Mills will also be irreparably

3

denied the benefit of its arbitration agreement if it is forced to litigate pending this appeal, *Bradford–Scott*, 128 F.3d at 506, whereas Plaintiffs will suffer no material harm from having the litigation stayed. Finally, federal policy under the FAA strongly supports granting a stay to protect the right to arbitration.

## STATEMENT OF FACTS

In June 2012, Plaintiffs' employment with General Mills was ended as part of a corporate restructuring. (Dkt. 15, ¶¶ 2, 13-45.)[1] General Mills offered each Plaintiff a severance package in exchange for signing a Release Agreement, and each Plaintiff accepted the severance package and signed the Release Agreement. The individually signed Release Agreements are part of the record below (Dkt. 8-1, at 1-42; Dkt. 21-1, at 1-57), and an example is submitted together with this motion (*see* the attached Decl. of Aaron D. Van Oort, ¶ 3 and Ex. B).

The Release Agreements include a release of all claims under the Age Discrimination in Employment Act (ADEA), along with an agreement to arbitrate on an individual basis all disputes arising out of or related to the release, including any underlying claims of age discrimination. The arbitration provision states, in its entirety:

> I agree that, in the event there is any dispute or claim arising out of or relating to the above release of claims, **including without limitation, any dispute about the validity or enforceability of the release or the assertion of any claim covered by the release**, all such disputes or

---

[1] Unless otherwise noted, citations of docket entries refer to the district court's docket.

claims will be resolved exclusively through a final and binding arbitration on an individual basis and not in any form of class, collective, or representative proceeding. I agree that this arbitration provision is governed by the Federal Arbitration Act (9 U.S.C. §§ 1-16) and that it is not intended to cover claims that cannot by law be required to be arbitrated or to prevent me from filing a complaint with a governmental agency. I agree that the American Arbitration Association's Employment Arbitration Rules and Mediation Procedures ("AAA Employment Rules") will govern any arbitration proceeding brought under this provision and that no other rules or procedures (including AAA's Supplementary Rules for Class Arbitrations) will be applied to any such proceeding. I understand that the AAA Employment Rules, which include an explanation of the process for commencing arbitration, may be found at the AAA's web site, www.adr.org. I understand and agree that I am responsible to pay my own legal fees and expenses incurred in any arbitration proceeding, subject to the Arbitrator's authority to award attorney fees, costs or other remedies in accordance with applicable law. GMI will pay the AAA administrative fees, as well as the Arbitrator's fees and expenses, for any arbitration proceeding under this provision.

(*See* Van Oort Decl., ¶ 3 and Ex. B (emphasis added).)

Despite signing the Release Agreement, Plaintiffs sued General Mills in the district court, alleging violations of the ADEA (Counts Two through Five) and seeking declaratory relief invalidating the ADEA releases and arbitration agreements based on the requirements of the Older Worker Benefits Protection Act (OWBPA) (Count One). (Dkt. 1.) Plaintiffs did not bring any other claims or otherwise challenge the enforceability of their Release Agreements in either their original or Amended Complaint. (Dkts. 1 & 15.)

On March 5, 2015, General Mills brought a timely Motion to Dismiss and to Compel Arbitration on an Individual Basis. (Dkt. 5.) Plaintiffs opposed the motion, arguing that the OWBPA's waiver requirements entitle Plaintiffs to have their disputes

5

litigated in federal court. On October 23, 2015, the Court denied General Mills's Motion to Dismiss and to Compel Arbitration on an Individual Basis. (Dkt. 54.)

On November 3, 2015, General Mills timely filed its Notice of Appeal to this Court. (Dkt. 57.) The next day, it filed an expedited motion in the district court asking that court to stay all proceedings pending appeal. (Dkt. 60).

Undeterred, Plaintiffs did everything they could to try to force the litigation forward in the face of the appeal and motion to stay. On November 4 and 5, Plaintiffs filed written consents for additional former employees. (Dkt. 59, 69.) On November 5, Plaintiffs insisted that an early Rule 26(f) discovery conference occur on November 24 (*see* Dkt. 77-1, at 14), notwithstanding General Mills's position that jurisdiction had transferred to the Eighth Circuit and hence litigation could not proceed. (*See* Dkt. 79, at 2 ¶ 3.) On November 10, Plaintiffs moved for partial summary judgment. (*See* Dkts. 72, 74.) On November 12, Plaintiffs filed their opposition to the motion to stay. (*See* Dkt. 76.)

Although General Mills's motion to stay has been pending since November 4, and although the deadline for General Mills to answer the Amended Complaint is today, the district court has not granted a stay.

## STANDARD OF REVIEW

This Court decides *de novo* whether to grant a stay pending appeal. *See Art Etc. LLC v. Angel Gifts, Inc.*, 686 F.3d 654, 656 (8th Cir. 2012) ("We review de novo the district court's denial of a motion to stay pending arbitration.").

As discussed below, in the context of an appeal from denial of a motion to compel arbitration, a stay is mandatory.

In the context of a discretionary stay, the Court considers four factors:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). A stay is granted when the appeal presents "serious" legal issues and the balance of equities favors the stay applicant. *See James River Flood Control Ass'n v. Watt*, 680 F.2d 543, 545 (8th Cir. 1982).

## ARGUMENT

General Mills moved in the district court for a stay of proceedings pending appeal on November 4. Although the deadline for General Mills to answer the Amended Complaint is today, the district court has not acted on the motion. Out of deference for the district court and in compliance with Fed. R. App. P. 8(a)(1), General Mills has given the district court every opportunity to consider the stay first. But to protect its rights under the Federal Arbitration Act, General Mills is compelled to now file in this Court and seek expedited relief.

**I.      General Mills's Notice of Appeal Transferred Jurisdiction To This Court And Divested It From The District Court, Making A Stay Mandatory.**

The most fundamental reason to grant a stay of proceedings is that the district court lacks jurisdiction to proceed with the case, jurisdiction having been transferred

to this Court as soon as General Mills filed its notice of appeal under 9 U.S.C. § 16(a)(1). *See Bradford–Scott Data Corp., Inc. v. Physician Computer Network, Inc.,* 128 F.3d 504, 506 (7th Cir. 1997) (Easterbrook, J.), and cases cited.

It is blackletter law that "[a] federal district court and a federal court of appeals should not attempt to assert jurisdiction over a case simultaneously." *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982). In the context of an appeal arising from an order denying a motion to compel arbitration, "[w]hether the case should be litigated in the district court" is "the mirror image of the question presented on appeal." *Bradford-Scott*, 128 F.3d at 506. Because the court of appeals has jurisdiction over that question, the district court does not have jurisdiction and must stay its proceedings. A majority of the circuits have adopted this rule. *See id.* at 504; *Levin v. Alms & Assocs., Inc.,* 634 F.3d 260, 264–66 (4th Cir. 2011); *Ehleiter v. Grapetree Shores, Inc.,* 482 F.3d 207, 215 n. 6 (3d Cir. 2007); *McCauley v. Halliburton Energy Servs., Inc.,* 413 F.3d 1158, 1160–62 (10th Cir. 2005); *Blinco v. Green Tree Servicing, LLC,* 366 F.3d 1249, 1251–52 (11th Cir. 2004). *But see Weingarten Realty Investors v. Miller*, 661 F.3d 904, 909-10 (5th Cir. 2011) (stay of proceedings is not automatic upon filing notice of appeal); *Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 54 (2d Cir. 2004) (same); *Britton v. Co-op Banking Group*, 916 F.2d 1405, 1412 (9th Cir. 1990) (same).

This Court has not yet addressed whether an appeal from a denial of a motion to compel arbitration automatically divests the district court of jurisdiction. In addressing appeals from orders denying arbitration, however, this Court has adopted

Appellate Case: 15-3540     Page: 8     Date Filed: 11/20/2015 Entry ID: 4338801

the logic that compels a stay. In *Conners v. Gusano's Chicago Style Pizzeria*, 779 F.3d 835, 839 (8th Cir. 2015), the Court reasoned that an order denying arbitration "can only be effectively challenged on immediate appeal because the advantages of arbitration will be forever lost if the appeal is delayed." *See also Nordin v. Nutri/System, Inc.*, 897 F.2d 339, 342 (8th Cir. 1990) (same). So too here: General Mills will be deprived of the benefit of its arbitration agreements if district court proceedings are not stayed, even if it ultimately prevails on appeal.

General Mills filed its notice of appeal under § 16(a)(1) on November 3, 2015. (Dkt. 57.) As of that date, jurisdiction transferred to the Eighth Circuit. Plaintiffs are trying to force the litigation forward notwithstanding the appeal by demanding a Rule 26(f) meeting to plan discovery (*see* Dkt. 77-1, at 14) and moving for summary judgment on the enforceability of their releases (*see* Dkt. 72). Those actions are *exactly* the type of proceedings that *Bradford-Scott* and other cases have concluded would defeat the point of the appeal and create the risk of inconsistent rulings. This Court should therefore stay all proceedings pending resolution of the appeal.

## II. Even If A Stay Is Discretionary, The Four *Hilton* Factors Compel Issuing One In This Case.

Even if a stay were not mandatory for all arbitration appeals, it would be required for this appeal under the four factors articulated in *Hilton v. Braunskill*, 481 U.S. 770 (1987):

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably

injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

Even the circuits that do not recognize the mandatory-transfer rule hold that a stay is appropriate in appeals from an order denying a motion to compel arbitration. *See, e.g.*, *Weingarten Realty Investors v. Miller*, 661 F.3d 904, 910 (5th Cir. 2011).

### A.    General Mills is likely to succeed on its appeal.

The first factor strongly supports granting a stay because General Mills is highly likely to prevail on its appeal and obtain enforcement of the arbitration agreements, given that the Supreme Court has already held that agreements to arbitrate ADEA claims are enforceable in opinions whose reasoning controls this case. *See Gilmer v. Interstate/ Johnson Lane Corp.*, 500 U.S. 20, 35 (1991); *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 129 S. Ct. 1456, 1461 (2009).

Arbitration agreements are enforceable as a matter of federal law because the Federal Arbitration Act states that a written provision "to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Congress enacted the FAA to counteract widespread and longstanding judicial hostility to arbitration. *See Am. Express v. Italian Colors Restaurant*, 133 S. Ct. 2304, 2308-09 (2013). Under it, courts must "rigorously enforce arbitration agreements according to their terms." *Id.* at 2309.

Congress can, of course, create exceptions to the FAA and provide in another federal statute that claims brought under that statute are not subject to arbitration. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 627-28 (1985); *Bailey v. Ameriquest Mortg. Co.*, 346 F.2d 821, 822 (8th Cir. 2003). But given the strong federal policy in favor of arbitration established by the FAA, the FAA's mandate must be "overridden by a contrary congressional command." *Shearson/American Express Inc. v. McMahon*, 482 U.S. 220, 226 (1987). Courts will not, moreover, infer such a command from references in a statute to a "court" or a "judicial proceeding," because "[i]t is utterly commonplace for statutes that create civil causes of action to describe the details of those causes of action, including the relief available, in the context of a court suit," and those references do not evince any congressional intent to depart from the FAA. *CompuCredit Corp. v. Greenwood*, 132 S. Ct. 665, 670 (2012).

Previous plaintiffs have argued that the ADEA contains a congressional command not to allow arbitration, but the Supreme Court has rejected that argument. In *Gilmer v. Interstate/ Johnson Lane Corp.*, the Court held that the petitioner had "not met his burden of showing that Congress, in enacting the ADEA, intended to preclude arbitration of claims under that Act." 500 U.S. 20, 35 (1991). The Court reiterated that conclusion in *14 Penn Plaza LLC v. Pyett*, where it held that "the ADEA does not preclude arbitration of claims brought under the statute." 556 U.S. 247 (2009). This Court has, of course, followed the Supreme Court's holdings and enforced motions to compel arbitration of ADEA claims. *See Faber v. Menard, Inc.*, 367

11

Appellate Case: 15-3540    Page: 11    Date Filed: 11/20/2015 Entry ID: 4338801

F.3d 1048, 1052 (8th Cir. 2004); *Arkcom Digital Corp. v. Zerox Corp.*, 289 F.3d 536, 537-39 (8th Cir. 2002).

Plaintiffs in this case argued, and the district court was persuaded, that although the merits of ADEA claims are arbitrable, the enforceability of a release of such claims is not arbitrable because of amendments to the ADEA contained in the Older Workers Benefit Protection Act (OWBPA) of 1990, codified at 29 U.S.C. § 626(f)(1), (f)(3). Those amendments added language to the ADEA stating that an individual "may not waive any right or claim" unless the waiver is "knowing and voluntary," and further added that the party "asserting the validity of a waiver shall have the burden of proving in a court of competent jurisdiction" that the waiver was knowing and voluntary. 29 U.S.C. § 626(f)(1), (f)(3).

Plaintiffs and the district court are incorrect for several reasons. First, the Supreme Court has already commented, twice, that the OWBPA amendments to the ADEA do *not* express a "congressional command" to exclude claims from the FAA. In *Gilmer*, decided in 1991, the Court declared that Congress "did not explicitly preclude arbitration or other nonjudicial resolution of claims, even in its recent amendments to the ADEA." 500 U.S. at 29 (emphasis added). Those then-recent amendments were the ones enacted by the OWBPA. Again in *CompuCredit*, decided in 2012, the Court noted that in *Gilmer* it had said that the OWBPA's provisions addressing waiver did not preclude arbitration of claims. 132 S. Ct. at 671 n.3. The statements in *Gilmer* and *CompuCredit* may have been dicta, but "federal appellate

12

Appellate Case: 15-3540     Page: 12     Date Filed: 11/20/2015 Entry ID: 4338801

courts are bound by the Supreme Court's considered dicta almost as firmly as by the Court's outright holdings, particularly when . . . a dictum is of recent vintage and not enfeebled by any subsequent statement." *S. Wine & Spirits of Am., Inc. v. Div. of Alcohol & Tobacco Control*, 731 F.3d 799, 809 (8th Cir. 2013) (quotation omitted).

Second, the very next year after Congress amended the ADEA through the OWBPA, it amended the statute again and added a note to the U.S. Code that formally "encouraged" parties to use "alternative means of dispute resolution" to resolve ADEA claims, specifically including "arbitration." *See* Pub. L. 102-166, section 118, 105 Stat. 1071, enacted on Nov. 21, 1991, now codified at 42 U.S.C. § 1981 note. This express congressional finding, made after the OWBPA amendments, makes it impossible to conclude those amendments enacted a congressional command not to allow arbitration.

Third, the language in the OWBPA amendments in which Plaintiffs perceive an intent to block arbitration is exactly the type of general reference to a court action that the Supreme Court has repeatedly found to be insufficient. Plaintiffs argue that, because a provision addressing the burden of proof for the affirmative defense of waiver states that the party "asserting the validity of a waiver shall have the burden of proving in a court of competent jurisdiction that a waiver was knowing and voluntary," 29 U.S.C. § 626(f)(3), the affirmative defense must be decided by a court and cannot be decided by an arbitrator. But other provisions of § 626 address the identity of the decision maker much more directly, and the Supreme Court has held

13

that those provisions are entirely consistent with arbitration. Section 626(c)(1) states that a plaintiff "may bring a civil action *in any court of competent jurisdiction*," and Section 626(c)(2) states that plaintiffs "*shall be entitled to a trial by jury.*" The Supreme Court in *Gilmer* rejected the argument that these provisions preclude arbitration, reasoning that any such "argument ignores the ADEA's flexible approach to resolution of claims." 500 U.S. at 29. That compelling logic is even stronger now than it was when *Gilmer* was decided, given the subsequent 1991 amendment that formally "encouraged" parties to use "alternative means of dispute resolution," including "arbitration." *See* Pub. L. 102-166, section 118, 105 Stat. 1071, enacted on Nov. 21, 1991, codified at 42 U.S.C. § 1981 note.

Fourth, to find a congressional intent to preclude arbitration in a provision that addresses only the burden of proof—and the burden of proof only for an affirmative defense—would directly contradict the reasoning of *CompuCredit*. In *CompuCredit*, the plaintiffs argued that two provisions in the Credit Repair Organization Act (CROA), one addressing disclosures and another addressing waivers, evinced a congressional intent to preclude arbitration. 132 S. Ct. at 669. The disclosure provision required businesses to tell customers that they "have a right to sue a credit repair organization that violates" the CROA. *Id.* The anti-waiver provision stated that any waiver by a consumer of "any right of the consumer" under the CROA "may not be enforced by any Federal or State court or any other person." *Id.* The Supreme Court rejected the argument that these provisions barred arbitration, holding that it would be "strikingly

14

out of place" to find an intent to block arbitration "in a section that is otherwise devoted to" the issue of notice. *Id.* at 670. The Court added that it would "take[] a considerable stretch to regard the nonwaiver provision as a 'congressional command' that the FAA shall not apply," *id.* at 671, and held that if Congress had meant to prohibit arbitration, "it would have done so in a manner less obtuse than what" plaintiffs suggest, *id.* at 672. In exactly the same way in this case, it would be "strikingly out of place" to find an intent to block arbitration in a section that otherwise addresses only the burden of proof, and the burden of proof, moreover, only for an affirmative defense, which is all that § 626(f)(3) does.

Fifth, interpreting the ADEA to allow arbitration of the merits of ADEA claims but not the enforceability of releases of those claims would introduce a measure of illogic and inefficiency into the ADEA's remedial scheme that it is impossible to believe Congress intended. What sense would it make to require an affirmative defense to be decided by a court when the claims themselves must be decided by an arbitrator, as the Supreme Court has expressly held they may be? To attribute that intent to Congress in the face of its policy "encourag[ing]" parties to use "arbitration," 42 U.S.C. § 1981 note, would require an exceptionally clear statement in the text of § 626. No such statement exists.

In sum, the district court's refusal to enforce the parties' agreements to arbitrate cannot be reconciled either with the ADEA or with decades of precedent from the Supreme Court and this Court. General Mills is highly likely to prevail on

15

appeal and obtain an order reversing the judgment of the district court and compelling arbitration, as this Court has done in other cases. *See Owen v. Bristol Care, Inc.*, 702 F.3d 1050, 1052-55 (8th Cir. 2013); *Franke v. Poly-America Med. & Dental Benefits Plan*, 555 F.3d 656, 658-59 (8th Cir. 2009); *Faber v. Menard, Inc.*, 367 F.3d 1048, 1052-55 (8th Cir. 2004); *Bailey v. Ameriquest Mortg. Co.*, 346 F.3d 821, 822-24 (8th Cir. 2003); *Larry's United Super, Inc. v. Werries*, 253 F.3d 1083, 1085-87 (8th Cir. 2001).

### B. General Mills Will Be Irreparably Harmed Absent A Stay.

When an order denies a motion to compel arbitration, the party seeking arbitration is deprived of the inexpensive and expeditious means by which the parties had agreed to resolve their disputes, causing it irreparable injury. As this Court has explained:

> Orders denying arbitration do have an injunctive effect and have serious, perhaps irreparable, consequences . . . . It has serious consequences because of the irreparable harm that exists when arbitration is denied ab initio. If a party must undergo the expense and delay of trial before being able to appeal, the advantages of arbitration—speed and economy—are lost forever.

*Conners v. Gusano's Chicago Style Pizzeria*, 779 F.3d 835, 839 (8th Cir. 2015); *see also Alascom, Inc. v. ITT N. Elec. Co.*, 727 F.2d 1419, 1422 (9th Cir. 1984).

Here, if proceedings in the district court are not stayed pending the appeal, General Mills will be required to spend substantial time and resources on the litigation—expenses that are entirely inconsistent with the agreement to arbitrate. "By providing a party who seeks arbitration with swift access to appellate review, Congress

16

Appellate Case: 15-3540     Page: 16     Date Filed: 11/20/2015 Entry ID: 4338801

acknowledged that one of the principal benefits of arbitration, avoiding the high costs and time involved in judicial dispute resolution, is lost if the case proceeds in both judicial and arbitral forums." *Blinco*, 366 F.3d at 1251. Forcing a party to engage in litigation that may be entirely wasted does not further the efficiency that Congress endorsed. The second factor therefore strongly supports granting a stay.

### C. A Stay Would Not Injure Plaintiffs.

By contrast, the inconvenience Plaintiffs will experience if a stay is granted is minimal. If the Court grants a stay and later affirms, Plaintiffs may proceed to litigate the enforceability of their ADEA waivers. If this Court reverses, Plaintiffs will have suffered no harm, as they had no right to judicially litigate any aspect of their claims in the first place. *See, e.g.*, *Unison Co. Ltd. v. Juhl Energy Dev., Inc.*, 789 F.3d 816, 818-21 (8th Cir. 2015) (reversing denial of motion to compel arbitration). In either event, a stay will not deprive Plaintiffs of any substantive right. Indeed, the only impact on Plaintiffs will be a relatively short delay in the adjudication of their claims. Plaintiffs waited three years to file their lawsuit; the length of an appeal is modest in comparison. The third factor thus also supports granting a stay.

### D. A Stay Serves The National Policy Favoring Arbitration.

The Supreme Court has consistently and repeatedly held that the FAA embodies a national policy favoring arbitration. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 131 S. Ct. 1740, 1749 (2011). A stay pending resolution of the appeal will serve the public interest expressed by the FAA by promoting the strong federal policy

encouraging arbitration as a "prompt, economical and adequate" method of dispute resolution for those who agree to it. *See Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 479-81 (1989). This policy is expressed in the FAA's interlocutory appeal provision, which permits immediate appeals from decisions denying arbitration but does not allow immediate appeals from decisions compelling arbitration. *See* 9 U.S.C. § 16(a)(1)(A),(B).

Moreover, a stay pending the outcome of the appeal will serve the public interest by preserving judicial resources and avoiding duplication of effort. It would serve no interest for the district court to invest significant judicial resources in overseeing litigation, only to have this Court hold that litigation was not permitted because the parties agreed to arbitrate and their agreement is enforceable. *Bradford–Scott Data Corp.,* 128 F.3d at 506. The fourth factor thus also supports granting a stay.

## CONCLUSION

General Mills respectfully requests a stay pending appeal under Federal Rule of Appellate Procedure 8. In addition, because the deadline for General Mills to answer the Amended Complaint is *today*, and because the district court has not acted on General Mills's motion to stay that has been pending since November 4, General Mills also requests that the Court issue a temporary administrative stay *today* pending the Court's review of this motion, as authorized under 8th Circuit Rule 27A(b)(4). *See Brady v. Nat'l Football League*, 638 F.3d 1004, 1005 (8th Cir. 2011).

Dated: November 20, 2015                    FAEGRE BAKER DANIELS LLP

s/ Aaron D. Van Oort
Aaron D. Van Oort (MN #315539)
Jeffrey P. Justman (MN #0390413)
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, Minnesota 55402
(612) 766-7000

Marko J. Mrkonich
Littler Mendelson P.C.
80 South Eighth Street
Suite 1300
Minneapolis, Minnesota 55402
(612) 313-7650

Keith C. Hult
Littler Mendelson P.C.
321 North Clark Street
Suite 10000
Chicago IL 60654
(312)-795-3206

*Counsel for Appellant General Mills, Inc.*

US.103338425.01

**CERTIFICATE OF SERVICE**

I hereby certify that on November 20, 2015, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system, and I will serve a copy of the foregoing on all participants in the case who are not registered CM/ECF users by mailing a copy of the same, first-class, postage paid, to the address listed on the Court's CM/ECF system.

s/ Aaron D. Van Oort
Counsel for Appellant
